1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

DAVID R.,

11

Plaintiff,

CASE NO. 3:22-CV-5836-DWC

12

v.

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

13

COMMISSIONER OF SOCIAL
SECURITY,

14

Defendant.

15

16

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of

17

Defendant's denial of her applications for supplemental security income (SSI) and disability

18

insurance benefits (DIB). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73,

19

and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned

20

Magistrate Judge. Dkt. 2.

21

After considering the record, the Court concludes the introduction of new evidence as

22

well as harmful error committed by the ALJ dictate that this matter be reversed and remanded

23

pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this

24

Order.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 1

# I. BACKGROUND

On September 20, 2019 Plaintiff filed applications for SSI and DIB, alleging disability beginning on August 1, 2016. Administrative Record (AR) 248-254. His application was denied initially and upon reconsideration. AR 129-166. On May 4, 2021 a telephonic hearing was held before an ALJ. AR 64-98. In a written decision dated July 28, 2021 the ALJ decided Plaintiff was not disabled. AR 35-63. On August 29, 2022 the Appeals Council denied Plaintiff's request for administrative review, making the ALJ's decision the final Agency decision. AR 1-7; 20 C.F.R. §§ 404.981, 416.1481.

On appeal to this Court, Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony about migraines, which resulted in additional errors throughout the ALJ's sequential evaluation. Notably, Plaintiff also submitted new evidence to the Appeals Council following the ALJ's decision. Dkt. 11 at 12; AR 13-34, 99-124, 332-333.

# II. THE ALJ'S FINDINGS

The ALJ found Plaintiff has the following severe impairments of Chiari malformation, degenerative disc disease of the cervical and lumbar spine, shoulder dysfunction, sprain of the right ankle, ankle impingement syndrome, osteochondral defect of the talus, pes planus, obesity, anxiety with depression, and attention deficit hyperactivity disorder. AR 41.

The ALJ found that the combination of Plaintiff's impairments did not meet or equal any Listing. AR 41.

The ALJ found Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR § 404.1567(a), with the following additional limitations: he was limited to standing and walking occasionally but has no limits on sitting; he could not use foot

1 controls with the right lower extremity; he could occasionally climb ladders, ropes, and

2 scaffolds; he was limited to no overhead reaching, frequent reaching at other levels, and frequent

3 pushing/pulling; he could occasionally kneel, crouch, crawl, and stoop; he could have occasional

4 exposure to vibrations, unprotected heights and dangerous machinery; he could perform simple

5 and detailed tasks, with 10-minute break after a 2-hour interval of work, which can be

6 accomplished in normal breaks, and; he could interact with the public up to 5% of the time. AR

7 43.

8    At step five the ALJ concluded that a person of Plaintiff's age, with his education, work

9 experience, and RFC, remained capable of performing jobs that exist in significant numbers in

10 the national economy such as Document Specialist, Hand Painter / Stainer, and Lens Block

11 Gauger, and therefore was not disabled. AR 55; 20 CFR § 404.969.

12                          **III. STANDARD OF REVIEW**

13    Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

14 social security benefits if the ALJ's findings are based on legal error or not supported by

15 substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

16 Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the

17 Commissioner's decision must be affirmed if it is supported by substantial evidence and free of

18 harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

19 2008).

20    Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of

21 Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The Supreme Court describes it as "more

22 than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 3

1  only—such relevant evidence as a reasonable mind might accept as adequate to support a

2  conclusion." *Id*. (internal quotations omitted).

3  **IV. DISCUSSION**

4  **A. New Evidence**

5      Plaintiff submitted additional evidence to the Appeals Council briefly post-dating the

6  ALJ's decision. This evidence contains an August 24, 2021 treatment note indicating Plaintiff

7  had an MRI of the brain and cervical spine on June 22, 2021, indicating Plaintiff continued to

8  suffer from a Chiari 1 malformation[1] with a prominent T2 hyperintensity possibly representing a

9  central canal or cervical cord syrinx, as well degenerative changes with some canal stenosis at

10 multiple levels of his cervical spine. AR 13-14, 34, 100. The accompanying treatment note

11 indicates that Plaintiff suffers from both tension headaches and migraine headaches, and while

12 his tension headaches were somewhat well controlled with Naproxen, his migraines were not.

13 AR 13. Plaintiff was prescribed Triptan and Imitrex. *Id*.

14     There is also a new pulmonary and sleep medicine evaluation dated August 9, 2021

15 indicating Plaintiff was diagnosed with sleep disordered breathing with snoring, witnessed

16 apneas, morning headaches, and daytime somnolence, and that a sleep study was ordered. AR

17 16, 18-19.

18     The Appeals Council found "this evidence does not show a reasonable probability that it

19 would change the outcome of the decision". AR 2.

20     When the Appeals Council considers new evidence, that evidence becomes part of the

21 administrative record the district court must consider when reviewing the Commissioner's final

22 decision. *Brewes v. Comm'r of Soc. Sec. Admin*., 682 F.3d 1157, 1163 (9th Cir. 2012)(citing

23 _____

24     [1] A Chiari malformation is a condition where brain tissue extends into the spinal canal.

1  *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999)); *see also Taylor v. Comm'r of Soc. Sec.*

2  *Admin*., 659 F.3d 1228, 1232 (9th Cir. 2011). The Court considers this evidence for the purpose

3  of determining "whether, in light of the record as a whole, the ALJ's decision was supported by

4  substantial evidence" and "free of legal error." *Brewes*, 682 F.3d at 1163; *Taylor*, 659 F.3d at

5  1232.

6           This Court has reviewed the new evidence submitted to the Appeals Council. As

7  discussed below, the Court finds the ALJ erred in discounting Plaintiff's statements regarding

8  migraines. The new evidence shows a correlation between the diagnoses of Chiari 1

9  malformation and Plaintiff's testimony regarding migraines. Thus, the Court finds that, when

10  viewed together with the portions of the record discussed, *infra*, the Court cannot definitively

11  state that the ALJ's decision was supported by substantial evidence and is free of legal error.

12

13  **B.  Plaintiff's Arguments**

14           Plaintiff argues the ALJ failed to provide clear and convincing reasons for discrediting

15  his subjective reporting regarding the severity and frequency of his headaches. *See generally*,

16  Dkt. 11. Plaintiff does not challenge the ALJ's treatment of his non-headache related

17  impairments, therefore the Court will not review those portions of the ALJ's decision. *See e.g.*,

18  *Cruz v. Int'l Collection Corp*, 673 F.3d 991, 998 (9th Cir. 2012) ("We review only issues which

19  are argued specifically and distinctly in a party's opening brief") (internal quotations and

20  citations omitted).

21           In his disability application Plaintiff listed migraines as one of the reasons he was

22  disabled. AR 276, 299. At the May 4, 2021 hearing Plaintiff testified he was let go from his last

23  job for missing excessive amounts of work due to migraines, which occurred two to three times

24

1  per week. AR 73-74, 78. He was unloading freight at Home Depot and did not feel safe operating

2  machinery or even driving to work. AR 74.

3      Plaintiff described experiencing two different kind of headaches. One consisted of a dull

4  pain with associated light sensitivity and could last up to three days, and the other was so severe

5  he could not get out of bed and due to head and neck pain, nausea, dizziness and/or vertigo. AR

6  74-75. Plaintiff testified to having fallen in the shower while experiencing headaches. AR 75. He

7  also testified that he could not drive while experiencing a headache. AR 76.

8      Plaintiff testified he believes his migraines are related to his neck impairment and Chiari

9  malformation birth defect, as his neck is never comfortable, even when lying in bed. AR 77-78.

10  Plaintiff admitted that after he stopped working the frequency of his migraines decreased

11  slightly, though they still occurred once or twice a week on average. AR 78.

12      The ALJ concluded that Plaintiff's Chiari malformation does not meet or equal listings

13  11.05 or 11.18 and that his associated headaches do not meet or equal listing 11.02. AR 41. The

14  ALJ found that Plaintiff's testimony regarding the limiting effects of his headaches was not fully

15  credible, stating:

16      However, **he has been inconsistent** about the reported prevalence of headaches to
various care providers. The claimant has also been **noted to discontinue**

17  **medication on his own**, with no indication of presentation for acute care from an
emergency room as a result.

18

19      He presented to the emergency room in September 2014 due to headaches and
imaging found the [Chiari] malformation (Exhibit B1F). He was referred to

20  neurosurgery and on evaluation in April 2015, **he complained of ongoing**
**headaches, located in the occipital location but with some radiation.**
Exacerbating factors included coughing, straining, and exertion. However, brain

21  imaging was negative for progressing abnormalities. Physical evaluation was
limited for notable signs including impaired coordination. **Surgery was discussed**

22  **and the claimant opted to wait.**

23      The claimant underwent independent medical consultative examination on October
23, 2016 (Exhibit B3F). He reported **ongoing migraine headaches up to 4 days a**

24

**week with nausea and vertigo. He reported being advised on surgery but he eventually declined it.** He reported no care, **only over the counter medications**. Evaluation was unremarkable with normal grip strength and coordination, with the claimant having problems with heel walking and hopping on the right leg due to right heel pain, not dizziness or other symptoms from his brain impairment. Sensation was intact.

The claimant did start care with a **naturopath for pain medication** (Exhibit B4F). He reported **ongoing headaches but wanted to avoid surgery**. He was noted to be using **cannabinoids, which he reported as effective** with his head pain and migraine pain. Treating evaluations through 2017 were unremarkable for mental status or neurological functioning.

He underwent a second independent medical consultative examination on January 4, 2018 (Exhibit B6F). He **complained of ongoing occipital headaches with nausea and blurred vision**. He was noted to be taking **ibuprofen and Phenergan** but made **no mention of cannabinoids**. Neurological examination was unremarkable, including coordination and vision.

He did receive a **neurology consult** on May 14, 2018 **due to headaches and episodic upper extremity numbness along with intermittent problems with memory** (Exhibit B9F/3-6). Treating notes observed that he had not had any updated MRIs for more than 2 years. Evaluation was unremarkable for abnormalities in strength, sensation, or coordination. He had normal thought processes, language, and fund of knowledge. He was started on new medication and advised on possible additional treatment with **Toradol and Phenergan** provided by the neurologist at the office. There was no indication that he required those measures as his next appointment was in April 1, 2019 (Exhibit B9F/7-10). He reported that prescribed **Topamax resulted in side effects** and he discontinued it. Physical evaluation was again unremarkable, with problems in tandem walking noted due to his ankle. He was **started on new medication [Nortriptyline]**. Brain imaging noted no new lesions or other changes (Exhibit B9F/19-22).

AR 44-45 (emphasis added).

The ALJ also took note of an independent medical consultative examination in December 2019, which she characterized as "unremarkable with respect to neurological functioning", and concluded that Plaintiff had not undergone any "significant treatment" for his headaches since then. AR 46. Finally, the ALJ found it important to note that Plaintiff told his ankle surgeon he did not have a headache during his office visits, and that after his ankle surgery he "continued to deny headaches with disturbances in vision or nausea to his orthopedists". *Id*.

1        Plaintiff argues the ALJ discredited his testimony regarding the severity and frequency of

2   his headaches for unsanctioned reasons. Specifically, Plaintiff insists that "variations in the

3   number of headaches [he] experienced within the record, which spans more than five years, [] is

4   entirely consistent with headaches, especially migraines, which tend to occur intermittently and

5   in response to particular triggers." Dkt. 11 at 8. Additionally, Plaintiff contends the ALJ failed to

6   properly consider the reason he discontinued some prescription headache medications in

7   contravention of the regulations requiring the ALJ to do so before discrediting a claimant's

8   testimony based on "conservative treatment". *Id*.; SSR 16-3p, 2016 WL 1237954; AR 454, 512.

9   Plaintiff argues the ALJ also failed to properly consider the reason Plaintiff opted to wait to

10  undergo brain surgery. Dkt. 11 at 9.

11       Notably, Plaintiff points out that, somewhat incongruously, the ALJ found Plaintiff's

12  migraines were adequately controlled with the treatments he did undergo, though Plaintiff insists

13  substantial evidence does not support this finding as Plaintiff continued to experience headaches

14  even when following his prescriptions, and continued to seek alternative therapies throughout the

15  relevant period. Dkt. 11 at 9. Similarly, Plaintiff argues the ALJ inappropriately inferred that

16  Plaintiff's headaches were not as severe as he alleged because he did not regularly visit the

17  emergency room. *Id*. Finally, the ALJ's conclusion that Plaintiff was not experiencing headaches

18  in April 2019 because he did not discuss them during a pre and post-operative surgical

19  appointments with the osteopathic surgeon who repaired his ankle is, according to Plaintiff, a

20  finding not supported by substantial evidence as his headaches "were being managed by other

21  providers" so he had no reason to speak to his surgeon about them. Dkt. 11 at 10 (citing AR 529-

22  530, 588).

23

24

1       Defendant responds by focusing on portions of the ALJ's decision Plaintiff does not

2   challenge. *See generally*, Dkt. 14. Regarding his migraines, however, Defendant contends that

3   the ALJ was not required to consider claims of medication side-effects unless because Plaintiff

4   did not present medical evidence supporting the presence of those side-effects. Dkt. 14 at 5.

5       "The ALJ conducts a two-step analysis to assess subjective testimony where, under step

6   one, the claimant must produce objective medical evidence of an underlying impairment or

7   impairments that could reasonably be expected to produce some degree of symptom."

8   *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks

9   omitted). Once the claimant produces medical evidence of an underlying impairment, an ALJ

10  may not discredit his testimony as to subjective symptoms merely because they are unsupported

11  by objective evidence. *See*, *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995). Instead, "for the

12  ALJ to reject the claimant's complaints, he or she must provide specific, cogent reasons for the

13  disbelief." *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). "General findings are

14  insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

15  undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

16      Here, the ALJ's conclusion that Plaintiff's testimony regarding the limiting effects of his

17  headaches was not fully credible because his reporting to various providers was inconsistent and

18  he did not visit the emergency room for migraines very often contravenes the above edict that an

19  ALJ may not discredit a claimant's testimony based on a perceived deficit in supporting

20  objective evidence. *Lester*, 81 F.3d at 834. The Court also concurs with Plaintiff that the ALJ

21  failed to support these findings with citation to substantial evidence. *See* AR 44-46.

22      Minimal or conservative treatment is "powerful evidence" regarding the extent of a

23  claimant's symptoms, including pain. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In

24

1   addition, failure to seek aggressive or alternative treatment permits the inference that a

2   claimant's symptoms were not as severe as he reported. *Tommasetti v. Astrue*, 533 F.3d 1035,

3   1039 (9th Cir. 2008). However, the ALJ must take into account the condition being treated and

4   also consider possible reasons the claimant did not engage in more treatment. *Revels v. Berryhill*,

5   874 F.3d 648, 667 (9th Cir. 2017); SSR 16-3p.[2]

6        Here, the ALJ failed to properly inquire about or consider Plaintiff's reasons for

7   discontinuing some of the medications he tried, and for deciding to wait to undergo brain

8   surgery. The ALJ simply stated that Plaintiff "discontinued medication on his own" because it

9   caused unspecified "side effects" and "weight gain", without inquiring during the hearing about

10  the side effects he experienced from Topamax, or how bad the weight gain was from

11  Nortriptylin, and considering Plaintiff's co-morbidities such as obesity and sleep issue. *See* AR

12  64-98. The ALJ also failed to perform any inquiry into possible reasons Plaintiff might be

13  hesitant to undergo brain surgery. *Id*.

14       The Court finds Defendant's argument that the ALJ need not consider alleged side effects

15  unless they are documented by a medical provider unpersuasive as the authority Defendant

16  points to does not address the discontinuation or refusal of prescribed treatment. *See Nyman v.*

17  *Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) ("claimant's self-serving statements may be

18  disregarded to the extent they are unsupported by objective findings"); *see also, Miller v.*

19  *Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (plaintiff required to produce evidence that

20  prescription medications impaired his ability to work where he claimed he was disabled as a

21  direct result of those side effects). Moreover, as Plaintiff accurately sets forth in his reply, when

22  _____

23       [2] SSR 16-3p explains, *inter alia*, "We will not find an individual's symptoms inconsistent with the evidence
     in the record … **without considering possible reasons he or she may not comply with treatment or seek**
24   **treatment** consistent with the degree of his or her complaints." *Id*. at 9 (emphasis added).

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 10

1   a Plaintiff has a good reason for not seeking more aggressive treatment the ALJ may not use this

2   fact to reject his testimony. Dkt. 16 at 2 (citing, *inter alia*, *Carmickle v. Comm. of Soc. Sec.*

3   *Admin.*, 533 F.3d 1155 (9th Cir. 2008).

4

5   **C.  Harmless Error**

6           Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d

7   1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the

8   claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v.*

9   *Commissioner*, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); *Molina*, 674 F.3d

10  at 1115. The determination as to whether an error is harmless requires a "case-specific

11  application of judgment" by the reviewing court, based on an examination of the record made

12  "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at

13  1118–1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. §2111)).

14          In this case, the Court finds the ALJ's rejection of Plaintiff's testimony regarding the

15  frequency and intensity of his headaches was not harmless because if the ALJ had credited that

16  testimony the ultimate disability determination in this case may have been different. Particularly

17  in light of new evidence not previously considered by the ALJ, discussed *supra*, this case

18  requires reversal and remand for a reevaluation of all headache-related evidence in the record as

19  well as a reexamination of each step in the sequential evaluation as it relates to Plaintiff's

20  headaches**.**

21

22

23

24

1

## V. CONCLUSION

2       For the foregoing reasons, the Court finds the ALJ improperly concluded that Plaintiff

3   was not disabled. Accordingly, this matter is REVERSED and REMANDED pursuant to

4   sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

5       Dated this 25th day of May, 2023.

6

7

       David W. Christel
8       Chief United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 12